Rachael D. Lamkin
LAMKIN IP DEFENSE
One Harbor Drive, Suite 300
Sausalito, CA 95965
RDL@LamkinIPDefense.com
916.747.6091
*Counsel for Defendant*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Digital Verification Systems, LLC | Case Number: 3:21-cv-08529-YGR |
| Plaintiff | **DEFENDANT'S NOTICE OF MOTION** |
| vs. | **AND MOTION TO STRIKE** |
| Foxit Software, Inc. | |
| Defendant | |

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE**

By and through its undersigned counsel, Defendant Foxit Software, Inc. ("Foxit") does hereby serve and file its Patent Local Rule 3-1 Motion to Strike.

///

///

///

///

Def's Motion to Strike                                                    0

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE**

To Plaintiff Digital Verification Systems, LLC, and its counsel of record.  Please take notice that this Motion will be heard on Tuesday May 24, 2022 at 2:00 pm, either at Oakland Courthouse, Courtroom 1 – 4th Floor 1301 Clay Street, Oakland, CA 94612, or via videoconference, as the Honorable Court may order.  The Motion will be heard on the papers filed and any arguments presented during the hearing.

**RELIEF SOUGHT**

Foxit respectfully seeks an order mandating that Plaintiff serve an amended Patent Local Rule 3-1(c) chart with a sufficient degree of specificity to provide notice as to why the plaintiff believes it has a reasonable chance of proving infringement.  *Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-cv-05236-YGR, 2012 U.S. Dist. LEXIS 172160, at *9 (N.D. Cal. Nov. 30, 2012). Said chart should expressly identify how each accused feature meets each asserted claim term.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Local Civil Rule 7-2(b)(4) and 7-4, Foxit herein provides its points and authorities.

I.     **INTRODUCTION**

Plaintiff's Patent Local Rule ("PLR") 3-1 and 3-2 disclosures are not sufficient to "provide reasonable notice to [Foxit] why the Plaintiff believes it has a reasonable chance of proving infringement."  *Theranos,* 2012 U.S. Dist. LEXIS 172160, at *7 (citations omitted). After the Parties' meet and confer, Plaintiff agreed to provide the subcategory of 35 U.S.C § 271, previously not provided.  *See* PLR 3-1(a).  Plaintiff also agreed to produce all licenses to the

Patent-in-Suit, not provided.[1]  *See* PLR 3-2(f).  But Plaintiff refused to cure its other deficiencies. Specifically, Plaintiff has failed to identify the actual accused modalities with the requisite specificity and Plaintiff has failed to provide its infringement theory for nearly every limitation of asserted Claim 1.

## II.    LEGAL AUTHORITY[2]

"The overriding principle of the Patent Local Rules is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims."  *Bender v. Maxim Integrated Prods., Inc.*, No. C 09-01152 SI, 2010 U.S. Dist. LEXIS 32115, at *4, 2010 WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010) (alteration in original) (internal citation omitted).  To that end, a party claiming patent infringement must serve a "Disclosure of Asserted Claims and Infringement Contentions" on all parties pursuant to Patent L.R. 3-1. In the disclosure, the party asserting infringement must, among other things: (a) identify each claim of each patent that is allegedly being infringed; (b) separately for each asserted claim and as "specific[ally] as possible," identify each accused apparatus, product, device, process, method, act or other instrumentality (or "Accused Instrumentality") for each claim of which the party is aware; and (c) provide "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality." Patent L.R. 3-1. This rule is a discovery device that "takes the place of a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery." *Network Caching Tech., LLC v. Novell, Inc.*, No.

---

[1] As of filing, Plaintiff still has not provided any documents responsive to PLR 3-2(f), but Foxit takes Plaintiff at his word that they will be produced by Friday March 25, 2022.  If not, Foxit will address that issue in its Reply.

[2] Authority copied verbatim from this Court's matter, *Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-cv-05236-YGR, 2012 U.S. Dist. LEXIS 172160, at *7 (N.D. Cal. Nov. 30, 2012).

C-01-2079-VRW, 2002 U.S. Dist. LEXIS 26098, at *12, 2002 WL 32126128, at *4 (N.D. Cal. Aug. 13, 2002); *see Bender v. Maxim Integrated Prods*., 2010 U.S. Dist. LEXIS 32115, at *4, [WL] at *2. The rule is also intended to require the party claiming infringement "to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Bender v. Advanced Micro Devices, Inc.,* No. C-09-1149 MMC (EMC), 2010 U.S. Dist. LEXIS 11539, at *2, 2010 WL 363341, at *1 (N.D. Cal. Feb. 1, 2010). That party is required to include in its infringement contentions all facts known to it, including those discovered in its pre-filing inquiry. *Renesas Tech. Corp. v. Nanya Tech. Corp.,* No. C03-05709 JF HRL, 2004 U.S. Dist. LEXIS 23601, at *8, 2004 WL 2600466, at *2 (N.D. Cal. Nov. 10, 2004).

"[A]ll courts agree that the degree of specificity under Local Rule 3-1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Shared Memory Graphics LLC v. Apple, Inc*., 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (*quoting View Eng'g, Inc. v. Robotic Vision Systems, Inc.,* 208 F.3d 981, 986 (Fed. Cir. 2000)).  While the patent rules do not "require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case, . . . a patentee must nevertheless disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it." *DCG Sys. v. Checkpoint Techs., LLC*, No. C 11-03792 PSG, 2012 U.S. Dist. LEXIS 53193, at *5, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012); *Shared Memory Graphics*, 812 F. Supp. 2d at 1025 (patent holder "must map specific elements of Defendants' alleged infringing products onto the Plaintiff's claim construction").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.    PLAINTIFF HAS FAILED TO PROVIDE NOTICE AS TO WHY IT BELIEVES IT HAS A REASONABLE CHANCE OF PROVING INFRINGEMENT

Plaintiff Digital Verifications Systems, LLC ("DVS") asserts Claim 1 of US Patent No. 9,054,860 (the "'860 Patent").  But its PLR 3-1(c) Infringement Chart is insufficient at nearly every limitation.

Claim 1 of the '860 Patent covers, at a very high level, applying digital signatures to electronic files.



'860 Patent, Dkt. No. 1-1, FIG 3.

Claim 1, limitation (a) reads, "at least one digital identification module structured to be associated with at least one entity".  '860 Patent, Dkt. No. 1-1, 9:8-9; Lamkin Decl., Exh A, at 2-3.  This limitation would cover, for example, a digital signature associated with a person.  But DVS' PLR disclosure is problematic because it never actually identifies the specific "digital

Def's Motion to Strike                                                                                          4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

identification module".  DVS points to the output of the module, *i.e.,* a "Digital ID" feature, digital signatures generically, and even public key infrastructure functionality, but never actually identifies the module claimed or explains its infringement theory for the limitation.  Lamkin Decl., Exh. A, at 2-4.

Identification of the specific "module" in each of the claim limitations is particularly important because the word "module" is a nonce word, often signifying means plus function limitations.  *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1358 (Fed. Cir. 2015); *Grecia v. Samsung Elecs. Am., Inc.,* 780 F. App'x 912, 916 (Fed. Cir. 2019).  As such, in each limitation, DVS' identification of the specific structure in the accused product that allegedly satisfies the "module" terms is particularly important.  *See Twin Peaks Software Inc. v. IBM Corp*., 690 F. App'x 656, 664 (Fed. Cir. 2017) ("[T]he *quid pro quo* for the convenience of employing § 112, ¶ 6 is to clearly link or associate corresponding structure to the claimed function.").

Further in limitation (a), as with every limitation below, DVS merely places screenshots and links to YouTube, without any narrative or explanation.  Foxit understands that DVS has accused an electronic signature or eSign product, but beyond that, there is no explanation for how any of the other claim terms are met by the accused product.[3]

Limitation (b) reads, "a module generating assembly structured to receive at least one verification data element corresponding to the at least one entity and create said at least one digital identification module".  Lamkin Decl., Exh. A, at 5-6.  For this limitation, DVS' PLR 3-1(c) chart again contains screenshots containing the word "digital signature," but DVS never

---

[3] With one exception: the claim term "verification data element" appears to mean a user's log in credentials.  Lamkin Decl., Exh A, at 5.

actually explains its infringement theory for the other claim terms and never maps the accused products to the claim limitation.

For example, Foxit does not know DVS' theory for how the accused product meets the terms, "a module generating assembly structured to receive at least one verification data element".   The "module generating assembly" term is particularly important because, in an *Inter Partes* Review, the Patent Trial and Appeal Board construed the term as a means-plus-function limitation.[4]   As such, the accused structure associated with the "module generating assembly" is critical.  *Twin Peaks,* 690 F. App'x, at 664 ("[T]he *quid pro quo* for the convenience of employing § 112, ¶ 6 is to clearly link or associate corresponding structure to the claimed function.").  DVS fails to explain how the accused product meets limitation (b).

Limitation (c) is no model of clarity, but Foxit believes it understands DVS' theory as to that limitation.

Limitation (d) has the same issue as (a), no identification of the specific module.

Limitation (e) reads, "wherein said at least one digital identification module is cooperatively structured to be embedded ***within only a single electronic file***".  Lamkin Decl., Exh. A, at 18-19 (emphasis added).  DVS' failure to adequately explain its infringement theory for this limitation is the most concerning.  By its plain meaning, the "digital verification module" (the electronic signature, Foxit presumes) can ***only*** be embedded within a single electronic file.

Indeed, the only reason the Patent-in-Suit issued is because named inventor Rothschild limited the claim such that the digital signature could ***only*** be embedded in one file.   During prosecution, Claim 1 was rejected over prior art.  On appeal, the Patent Trial and Appeal Board

---

[4] IPR2018-00745. Foxit does not file the IPR decision because Foxit assumes the Court does not want to be inundated with paper.  Foxit will file the paper upon request and will ultimately file the IPR paper as part of claim construction.

agreed that the prior art did not render obvious Claim 1 because none of the prior art taught a

signature tool wherein the signature could "only" be applied to a single file:

> disclosure of SignCode.exe signing two types of files, which are PVK and
> SPC (*see* Caphyon, pp. 2). The Examiner has not persuasively explained
> how the advanced installer's SignTool.exe teaches "within *only* a single
> electronic file" (emphasis added).

The cited portions of Caphyon relied upon by the Examiner in the

'860 Prosecution History, PTAB Appeal Decision, at 6 (Lamkin Decl., Exh B.)

But DVS' PLR 3-1 chart at limitation (e) merely recycles screen captures from the

previous limitations, which fail to evidence limitation (e) as a matter of law. *Chi. Bd. Options

Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1369 (Fed. Cir. 2012) ("In the absence of any

evidence to the contrary, we must presume that the use of these different terms in the claims

connotes different meanings.") (*quoting CAE Screenplates, Inc. v. Heinrich Fiedler GmbH &

Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000).)

Materially, DVS' 3-1 PLR disclosure fails to put Foxit on notice as to DVS' theory for

how the digital signature in the accused product is limited to **only** a single file.  If a user can

digitally sign more than one document, Foxit cannot infringe.  Indeed, Foxit believes the reason

DVS' PLR 3-1(c) disclosure is so opaque is because it understands that Foxit does not infringe.

The whole purpose of the accused product, or any modern eSign product, is to be able to sign

multiple documents.  But regardless, the Patent Local Rules require DVS to at least make its

Rule 11 basis known.  *Theranos*, 2012 U.S. Dist. LEXIS 172160, at *17.   DVS cannot dodge

this critical limitation.

Foxit has many other concerns with DVS's PLR 3-1 and 3-2 disclosures, but the above

are most concerning.   Foxit respectfully seeks an order mandating that DVS serve an amended

PLR 3-1 chart with a sufficient degree of specificity to provide reasonable notice as to why the plaintiff believes it has a reasonable chance of proving infringement.  *Theranos,* 2012 U.S. Dist. LEXIS 172160, at *9.  Said chart should expressly identify how each accused feature meets each asserted claim term.

Respectfully submitted,

*Rachael D. Lamkin*

Rachael D. Lamkin
Lamkin IP Defense
916.747.6091
RDL@LamkinIPDefense.com

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of March, 2022, a true and accurate copy of the above and foregoing:

### DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE

Was served upon all counsel of record via the Court's ECF system.

*Rachael D. Lamkin*

Rachael D. Lamkin